The next case to be argued is 07-71485 Sejour v. Mukasey. Each side will have 10 minutes. Good morning, Your Honors. May it please the Court, Lori Walls appearing on behalf of Petitioner Joelle Sejour. With me at Council table is Devin Terrio-Orr, who will address rebuttal. On brief is Robert Powell, and I'd like to reserve three minutes for rebuttal. The Court requested Council to address whether the petition for review was timely filed, specifically whether the petition should have been filed within 30 days of the IJ's November 1, 2006 order, or whether the Petitioner was required to obtain a final denial of relief by the BIA. After briefly addressing the jurisdictional issue, I'd like to address the merits of the case. This Court has jurisdiction over final orders of removal if the alien has exhausted administrative remedies available as of right and filed within 30 days of the final order of removal. 8 CFR 1003.3 states, An appeal from the decision of an immigration judge shall be taken by filing a notice of appeal directly with the Board within the time specified. An appeal is not properly filed unless it is received at the Board within the time specified. Requiring the Petitioner to forego an appeal to the BIA would read language right out of the statute that the alien has a right of appeal to the BIA. Cases such as Lolong v. Gonzalez and Castrejon Garcia v. INS concern whether a Petitioner may bypass appeal to the BIA, not whether he must do so. Requiring Petitioners to bypass appeal circumstances in which there is a direct appeal to this Court, or a petition for a view would lie from this Court directly to an IJA without going through the BIA. Are there circumstances? Yes, Your Honor, and particularly since Lolong. However, Lolong came out after the BIA's March 19, 2007 hearing. What happened in Lolong, as I understand it, it was simply that the BIA didn't have to send it back for another final order of removal. But I'm asking, are there any circumstances in which, for whatever reason, there can be a petition for review filed directly from an order issued by an immigration judge? We have Castrejon on that point, and I believe... I'm sorry? It's Castrejon Garcia. You could file directly from an IJA's order, but the question is whether you have to. I think the cases have all been... So you wouldn't have an exhaustion problem if you did that? I think the question, I mean, you certainly could. Isn't the issue here not whether you would appeal directly from an IJA order, but whether once you got the BIA order where there was really nothing left to happen except implementation of that order, whether you had to appeal from that order? And that's where we come into this kind of gap where we had Molina Camacho, and then we had Lolong later. We had these cases and we're... I don't know that this case would come up again. Right. Although we do have to assure ourselves... I mean, I think at the point the BIA remanded, the September 15, the second remand on the issue of deferral, under Molina, the IJA had to enter a final order of removal. So after Lolong came out, I think you could argue that it would be possible to appeal directly, but... Or not possible, but maybe if you didn't, you would lose it after Lolong. Well, I think the statute and the regulations all are very clear about what the process is, and there's an interesting exchange in... You have to file a petition once there's a final order of removal, and the problem in this case is that the BIA itself had said there wasn't one because of our case law at the time. But I'm still interested in the other question. You cited a case which you said did allow for a petition for review directly from an immigration judge. Could you tell me what case that is? Castrejon, which was actually before, though... I'm sorry. Castrejon concerns whether a BIA decision is final, notwithstanding remand. There have been other circuits. Popal v. Gonzales in the Third Circuit has ruled on this specific point. Are these citations in your brief? No, because this jurisdictional... How am I supposed to find them? Okay. The jurisdictional issue came up. Before you leave. Yes. Absolutely. The court actually has a paper, I think, that you can write additional citations on. You can do that afterwards. Okay, thanks. Let me ask you about the merits. The IJ essentially found that this was not as serious, that the underlying crime was not a particularly serious offense. Believed Mr. Sejor's testimony. But then it goes to the BIA, and the BIA says that Sejor's testimony was belied by other evidence. Isn't that the functional equivalent of saying that the IJ was clearly erroneous in his interpretation of Sejor's testimony? I think that the BIA would have to find specifically that the, you know, our position is that the BIA used hearsay reports to go behind the record of conviction. Okay, but if they can do that, isn't it within their province to say the IJ misunderstood the evidence, didn't realize it was belied by photographs that flatly contradicted? Isn't that within their province to say that? I think, Your Honor, it's a due process issue. If evidence is pulled from the police, hearsay evidence is pulled from the police reports after the IJ has made factual findings. But the police reports were presented to the IJ, weren't they? Yes, and he issued a carefully thought out decision using the Francescu factors and made a question. Understood, but there's a hierarchy, and then the BIA gets to review that. And they say, yeah, but when you look at the photographs that go with the police reports, they belie what the mayor said. Well, one of the issues we have with that is that at the time that BIA made that decision, Morales governed, and Morales v. Gonzalez, we've briefed this, and the modified categorical approach was still governing law at that point. And basically the BIA made its own factual findings overruling the IJ's findings and pulled hearsay evidence from the police record, which Mr. Sejour had no opportunity to respond to. That's a due process issue. Why didn't he have an opportunity at the IJ hearing to respond to it? Because at that point the IJ was using the modified categorical approach and didn't use police records. In fact, Mr. Sejour had a different story from what's in the police report. He put his story in front of the judge. The IJ found Mr. Sejour's testimony credible. But on that theory, if he was only relying on the records, it wouldn't have mattered whether Mr. Sejour was credible and he wouldn't have listened to Mr. Sejour. So he still was applying the same general approach, right? And you're saying he applied the modified categorical approach, i.e., he only looked at certain designated records, but obviously not because he did listen to Mr. Sejour's explanation and credited and based his determination on it. No. I mean, it's the IJ's purview to listen to testimony and weigh credibility. You're saying contradictory things. If nobody was supposed to look at anything but the records, then the IJ shouldn't have either. If somebody was supposed to, then they both could. So which is it? I guess, you know, again, our position is that the BIA should have used the clearly erroneous standard to review the IJ's findings of fact and did not. So in other words, we don't know what they used because they didn't use the magic words? Is that essentially what you're saying? Or are you telling us that we can look at the BIA decision and divine that some other way? I mean, they know what the standards are. How do we know they didn't use that when they went through and detailed the problems with the record? I think the BIA must find explicitly that the IJ's findings of fact were clearly erroneous. For due process reasons or because the regulations said so? For both. I think the due process issue was with the hearsay that Mr. Sejour had no opportunity to respond to. So when they say the IJ found him credible but the testimony is belied by other things, that's not the functional equivalent of saying the IJ was clearly erroneous? I think, actually, that the BIA is trying to have it both ways because we've got a situation where the IJ is saying we have a credible witness, and then they pull hearsay out of the record and say, you know, that his testimony is belied by the record. So they're not – do you see what I'm saying? You wanted to reserve some time. I did. Thanks very much. Joe. May it please the Court, my name is Lance Jolly and I represent the respondent, the Attorney General of the United States. Section 242 of the Immigration Nationality Act tells us that the petitioner is 30 days after the final order of removal and denial of all relief in which to petition this court for review. On September 15, 2006, the Board had denied all the relief. And on November 1, 2006, the IJ had issued the final order of removal. Suppose there was something wrong with that final order of removal. Couldn't he have appealed to the BIA? If there was something wrong with how the immigration judge entered the order or something, certainly. So what authority is there for – and you don't think that if he had done that, you would have come here and say he had it exhausted? When he appealed to the Board, he just basically reiterated the CAC claims. He didn't state any error of the IJ in entering the order. I understand that. But what ordinarily – Unless he didn't exhaust that claim, but okay. What I'm asking you is ordinarily petitions for review come to us from the BIA. What authority is there for somebody to skip the BIA and come directly from an IJ order, even a ministerial one? Section 242, which grants this court's jurisdiction, says we have jurisdiction over final orders of removal. And once that's – But is it final if it hasn't gone to the BIA, given the exhaustion requirement that pervades the entire statute? He had already exhausted everything. He didn't get exhausted. The Board had already decided the CAT and the particularly serious crime issues. So there was nothing left to further exhaust. Let me ask you a question about the merits, if I may. Sure. They presented evidence with respect to the CAT claim that if he goes back, there are gangs that will likely prey on people like him, and that this is done with the acquiescence of the police. In fact, the police help form these gangs or participate in the formation of the gangs. This was from Professor Stotsky, I think. I don't see where that's been contradicted anywhere. A lot of Professor Stotsky's testimony was that former members of the police were the ones that were involved in the gangs. So to the extent that there are a few rogue police officers, that does not necessarily equate to – Well, it's both that, I guess, you're saying they're alumni, but they're former police officers, plus the current police are unable or unwilling to control it. Well, the Board precedent is that if the Board is not – if the government has no reasonable control of the gang, then there is no CAT claim. Matter of Y-L-A-G-R-S-R in 2002 decision. But here there's the notion that they're fostering them, and that's just that they're not controlling them, that they are contributing to them and basically using them for their own purposes. But it does not – the record does not compel the conclusion that – certainly there might be some rogue police officers who contribute to this, but that does not mean it's – the applicable official is generally aware and reaches a legal responsibility to control the situation. What evidence did you introduce, or did the government introduce, to contradict the Stotsky testimony on this point? I do not believe we entered any evidence in contra. The Board found that – the Board basically, in a sense, rejected that there was a preponderance of evidence that this occurred in this decision. How would that be based on substantial evidence? The Board found – Do you want to wait? Okay, sorry. How could it be based on substantial evidence if the only evidence that was in there is this Professor Stotsky's report with the various percentages? Well, the Board relied on its decision in matter of JE, and it considered that the issues on appeal did not warrant traction from that decision. Well, I thought that decision had to do with when you get sent back to a country and then there's bad prison conditions in that country. But they had two bases here. There was that, and then there was also the percentages about the police fostering the attacks on individuals coming back and gangs. So that case you mentioned I don't think covers both bases of the BIA decision, does it? The Petitioners had an opportunity to have had – I guess it goes – I don't know what to necessarily say about that. But the Board decided what it decided. Well, that's not to help. I understand that. I guess they come here and say the District Court decided what it decided. And we accept that. But in a weird situation where usually they'll put in some testimony or they'll show some problems with the testimony and the government will, and here you have the testimony and then you have the Board decide what it decided. It goes to whether the government has reasonable control over the situation and whether their own government – I guess I would argue that the government does not even have reasonable control over these rogue officers and thus the cap petition would not be a fit. And so because the government does not have reasonable control over this situation, then the cap petition is not available in this situation. But what is the evidence of that? Whether the evidence has reasonable control? Right. But it is the Petitioners' burden to meet that burden. And the Board, in denying the claim, basically held, implicitly at least, that the government does not have reasonable control over that situation. Can I ask you, again, a CAT question? If we were to find that the Board mishandled the CAT part of this, it would go back and would he be entitled then to, what, deferral of removal under CAT or withholding under CAT? What would happen then? Well, because he was convicted of a particularly serious crime, the only relief available would be deferral. What's the difference between deferral under CAT and withholding under CAT? Well, there's different regulations that report to it. I think the strictures of removing, once conditions are okay, the cancellation of the cited relief are different, I think. Isn't the reality, if you have a deferral removal, a couple of things. You may have some restrictions on your travel outside the United States. If the conditions in the country change, the deferral can be yanked back. There is a procedure for doing it. You can't just do it willy-nilly. But there are significant procedural and substantive differences between withholding and deferral. That sounds right. I'm not prepared to answer the specific question. Deferral is less advantageous to the alien? To my understanding, it is. The IJ here essentially found that the government, that there was government involvement in what the gangs were doing because the government, by incarcerating these people, was promoting the view that they were criminals and that they were murderers and that they were, and so on. It's essentially inviting, in a sense, the activity that occurred after they were released. That's what the IJ found. The BIA doesn't address that at all and also doesn't address the finding that there were some police involved in the gangs and so on. They just don't deal with it at all. So how is that an adequate fact-finding by, or an adequate finding of clear error by the board when they just don't deal with some of the findings? The board, I believe, addressed both of those issues in its appeal by first. Where? Administrative record, page 57. It outlines the requirements to establish eligibility for CAT and it must be by or at the absence and not by persons the government is unable to control. Now all they said was that to the extent that the Haitian government has been unsuccessful in its effort to control criminal gangs, such failure does not establish an eligibility for protection under CAT. That's it. It doesn't deal with the other reasons why the government would seem to have been involved in the post-release gang activity. I don't think the board asked it. The board does not have to make an ape diseases of all of its claims. But if it's going to disregard facts, if it's going to find that facts are wrong, a factual finding is wrong, it has to say why and it hasn't done it. I guess that's a matter of opinion. I'm sorry, why is it a matter of opinion? Where does it do that? By how it lines out the requirements for the CAT claim and then finds out that it does not meet that burden. Certainly the board could have explained in more detail. I'm sorry? Certainly the board could have explained in more detail. It didn't explain what was wrong with the IJ's factual findings that there was direct involvement in some, that there was other than more government involvement here than an unsuccessful effort to control gangs. Well, part of the reason for that is because, let's see, sorry, rephrase the question, I'm sorry. The IJ found government acquiescence, not simply government inability to control the gangs. The BIA's response is it's not enough to find an unsuccessful effort to control gangs, but that wasn't what the IJ had found. Implicitly, that's just the board considered that the record did not establish that the government was able to control the gangs whether or not, I guess it could have been more clear about whether the government involvement in those gangs, but it did not need to do so by rejecting the gang claim outright. Mr. Jolly, you're over time, but let's let Judge McEwen ask one more question. One final question. Are you with the Department of Justice section related to immigration appeals, or are you from another section? No, I'm from the Office of Immigration Affairs. Okay. Thank you, Mr. Jolly. You folks have used up virtually all of your time. We'll give you a minute in rebuttal, but please keep it to a minute. Thank you, Your Honor. Just very briefly, on the jurisdictional question, the government's argument would essentially read the entire exhaustion requirement out of the statute and require aliens to be in this kind of catch-22 situation where they don't know who they have to appeal to. This would be especially problematic, considering the fact that there are a lot of pro se immigration litigants who aren't going to know who they're supposed to appeal to. So I think that we need to keep the plain language of the statute and allow aliens to exhaust their duties. Your colleague suggested that there was at least one case. Yes, and that case is a Papal v. Gonzales, which is a Third Circuit case, 416F3249, Third Circuit, 2005. And what were the circumstances for you? I'm not familiar. I just got the cite from co-counsel. I'd be happy to provide a supplemental brief on that issue. Are you aware of any cases in this circuit that have ever allowed a direct appeal, a direct petition from an IJ order of any kind? No, Your Honor. I'm not. On the merits, I just want to quickly talk about deferral because I think Judge Silverman, you're exactly right. There is uncontroverted evidence in the record that our client will face severe torture at the hands of the police. I mean, the expert specifically testified at AR 358 that the police have executed people who are deported, who are criminal deportees. There's no evidence. The government has no evidence to controvert that finding. And the BIA did not have any evidence to reverse the factual findings. They found that all the credibility findings were not clearly erroneous. There's a specific finding by the BIA to that effect. Did the BIA address that, or did it address the other findings that the government essentially was acquiescent in that they created the impetus for the gangs to be acting? I don't believe that they did, Your Honor. I mean, I think that the BIA's decision rests on three basic points. It said that there was no evidence that the torture was for the purpose of torture. Can I finish addressing your question? I see that I'm out of time. And that the expert testified that there was a 50% chance of being killed, and that's at AR 357. And then the BIA also said that torture sometimes occurring in prison does not establish that torture will occur. But, again, that's controverted by the expert's testimony at AR 368 that there's an 80% chance that our client's going to be harmed by the police. So unless you have any further questions, we'd ask that you grant the petition and grant our client withholding and deferral of removal. Thank you. The case has now been submitted. Thank you very much.
judges: Silverman, McKeown, Berzon